UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RONALD MIGYANKO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AIMBRIDGE HOSPITALITY, LLC.,<br><br>Defendant. | Case No. 2:20-cv-01095-NR<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND FOR NOMINAL DAMAGES** |

Plaintiff Ronald Migyanko ("Plaintiff" or "Mr. Migyanko"), on behalf of himself and the proposed class (defined below), brings this action against Aimbridge Hospitality, LLC ("Aimbridge Hospitality" or "Defendant") and alleges as follows:

## INTRODUCTION

1. Plaintiff Ronald Migyanko is dependent upon a wheelchair for mobility as the result of a diving accident which damaged his spinal cord.

2. The seat height of a standard wheelchair is approximately 18-20 inches from the floor or ground, and the height of the seat on Mr. Migyanko's chair is approximately 18 inches.

3. Mr. Migyanko stays at hotels from time to time. When he stays in a hotel, he stays in an accessible room that has special features calculated to accommodate his mobility impairment.

4. Over approximately the last decade, hotel bed heights (the height of the top of a mattress from the floor) have increased in response to customer preference. This increase has occurred not only in standard hotel rooms, but also in otherwise accessible rooms. This

1

phenomenon has become pervasive across all hotel lodging categories from budget properties to high-end luxury properties.

5.      As a result, bed heights which were approximately 21 inches from the floor are now often times 25-30 inches from the floor or higher.

6.      This increase in bed height can cause it to be virtually impossible for a wheelchair user like Plaintiff who has limited use of his arms and legs to independently transfer from his wheelchair to the bed surface.  This is because of the disparity in the height of a typical wheelchair (18-20 inches) and the height of the mattress surface (25-30 inches or higher).

7.      This phenomenon can cause an otherwise accessible hotel room to be utterly inaccessible.

8.      Placing an inaccessible bed in a so-called accessible room constitutes a fundamental violation of the Americans With Disabilities Act.

9.      The existence of this issue is well-known in the hospitality industry, and in fact many of Defendant's industry peers have either already addressed, or are planning to address, the issue directly so as not to impede the usability of their accessible rooms by the very individuals who are the putative customers for those rooms.

10.     In this case, Plaintiff seeks injunctive and declaratory relief, compelling Defendant to follow the general accessibility mandate of the ADA, and the ADA's requirement that public accommodations make reasonable modifications to facilitate accessibility, by eliminating this issue in its accessible rooms.  Plaintiff also seeks nominal damages.  *See Uzuegbunam v. Preczewski*, 141 S.Ct. 792 (2021).

## BACKGROUND

11. For more than 30 years, the Americans with Disabilities Act ("ADA") has required that individuals with disabilities be provided full and equal access to the goods, services and facilities provided by hotel owners and operators.

12. This mandate requires hotel businesses to provide patrons with accommodations that are readily accessible to individuals with disabilities.

13. However, many hotel operators, including Defendant, do not offer sleeping beds that are accessible to hotel patrons with disabilities. This is a fundamental violation of the general accessibility mandate of the ADA:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

14. Aimbridge Hospitality is one of the largest hotel management companies in the country and operates various hotels throughout the United States.

15. In failing to provide guest rooms with accessible beds, Defendant has engaged in illegal discrimination, excluded and deterred individuals with disabilities from patronizing Defendant's hotels (including Plaintiff), and denied individuals with disabilities full and equal access to the goods, services, facilities, privileges, advantages and accommodations that Defendant offers to the public.

16. Defendant's discrimination violates Title III of the ADA, and unless Defendant is required to change its policies and practices so that Defendant's goods, services, facilities, privileges, advantages and accommodations are accessible to individuals with disabilities, Plaintiff

and the proposed class will continue to be denied full and equal access to Defendant's hotels and will be deterred from using Defendant's hotels. Indeed, it is difficult to imagine a more fundamental violation of the general accessibility mandate of the ADA.

17. In accordance with 42 U.S.C. § 12188(a)(2), Plaintiff seeks a permanent injunction requiring that:

> a) Defendant offers the required number of accessible rooms with accessible sleeping surfaces (i.e. beds) at each of the hotels that it manages and/or operates, consistent with the ADA's room dispersal requirements; and
>
> b) Defendant changes its policies and practices necessary to afford all offered goods, services, facilities, privileges, advantages and accommodation to individuals with disabilities related to the provision of accessible sleeping surfaces (i.e. beds) at each of the hotels that it manages and/or operates.

18. Plaintiff also seeks nominal damages pursuant to the doctrine set forth in *Uzuegbunam.*

19. Plaintiff's claims are asserted as class claims pursuant to Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) was specifically intended to be utilized in civil rights cases where the plaintiff seeks injunctive relief for his or her own benefit and the benefit of a class of similarly situated individuals. To that end, the note to the 1996 amendment to Rule 23 states:

> Subdivision (b)(2). This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate . . . . Illustrative are various actions in the civil rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration.

## THE ADA AND ACCESSIBLE TRANSIENT LODGING

20. The ADA was signed into law by President George H.W. Bush more than thirty years ago with the intent to "provide a clear and comprehensive national mandate for the

elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).

21. When the ADA's implementing regulations were revised in 2010, a regulatory impact analysis found that "[s]ome of the most frequently cited qualitative benefits of increased access are the increase in one's personal sense of dignity that arises from increased access and the decrease in possibly humiliating incidents due to accessibility barriers. Struggling [to use a non-accessible facility] negatively affect[s] a person's sense of independence and can lead to humiliating accidents, derisive comments, or embarrassment. These humiliations, together with feelings of being stigmatized as different or inferior from being relegated to use other, less comfortable or pleasant elements of a facility . . . all have a negative impact on persons with disabilities." *Final Regulatory Impact Analysis of the Final Revised Regulations Implementing Titles II and III of the ADA, Including Revised ADA Standards for Accessible Design*, U.S. Dep't Just. (July 3, 2010), p. 138.[1]

22. Title III of the ADA includes a general accessibility mandate requiring that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

23. Discrimination on the basis of disability can occur, generally, through a denial of the opportunity to participate in or benefit from goods, services, facilities, privileges, advantages, or accommodations (42 U.S.C. § 12182(b)(1)(A)(i)); from affording goods, services, facilities, privileges, advantages, or accommodations that are not equal to those afforded to other individuals

---

[1] Available at http://www.ada.gov/regs2010/RIA_2010regs/DOJ%20ADA%20Final%20RIA.pdf (Last retrieved 9/23/2020).

(42 U.S.C. § 12182(b)(1)(A)(ii)); from providing goods, services, facilities, privileges, advantages, or accommodations that are separate from those provided to other individuals (42 U.S.C. § 12182(b)(1)(A)(iii)); or from utilizing methods of administration that have the effect of discriminating on the basis of a disability (42 U.S.C. § 12182(b)(1)(D)).

24. The United States Department of Justice ("DOJ") has issued scoping regulations which operate in tandem with the general accessibility mandate of the ADA.

25. The ADA's statutory language expressly requires reasonable modifications in policies, practices, or procedures when necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the public accommodation can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

26. The same requirement that public accommodations must make reasonable modifications to facilitate accessibility is also expressly set forth in the ADA's regulations. *See* 28 C.F.R. §36.302.

27. While the ADA's implementing regulations also address specific accessibility requirements with respect to certain elements in hotels, those regulations are silent regarding arguably the most important element in an "accessible" hotel room: hotel bed height.

28. The DOJ has long taken the position that the fact that a specific element in a public accommodation is not addressed in the ADA's implementing regulations does ***not*** change the fact that a public accommodation's goods and services have to be accessible:

> [Defendant's] interpretation improperly restricts the scope of the ADA, and its suggestion that the ADA Standards alone establish a public accommodation's obligations under title III is incorrect. The ADA Standards are only one component of title III and do not govern the ADA claim in this case. Rather, title III's general prohibition against discrimination on the basis of disability and its requirements to provide auxiliary aids and services where necessary to ensure effective

6

> communication establish obligations under the ADA with respect to [Defendant's] use of POS devices to provide payment services to its customers . . . .
>
> Indeed, there are many instances where the Department has found physical and communication barriers not specifically identified in its regulation or the ADA Standards to be covered under title III. For example, the Department has long considered websites to be covered by title III despite the fact that there are no specific technical requirements for websites currently in the regulation or ADA Standards. (internal citations omitted).
>
> Similarly, the absence of specific technical standards or regulatory provisions that directly address a public accommodation's obligation to provide accessible POS devices in no way establishes that the accessibility of POS devices is outside the scope of title III, especially when current regulations incorporate specific obligations for effective communication. 28 C.F.R. § 36.303(a). Until the process of establishing specific technical requirements for POS devices is complete, public accommodations have a degree of flexibility in complying with title III's more general requirements of nondiscrimination and effective communication—but they still must comply. As described below, those requirements include, absent a fundamental alteration or undue burden defense, providing auxiliary aids and services in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability. 28 C.F.R. §§ 36.303(a) (c)(1)(ii).

Statement of Interest of the United States of America, *New v. Lucky Brand Dungarees Stores, Inc. d/b/a Lucky Brand Jeans*, 14-CV-20574 (S.D.Fl. April 10, 2014), attached as Exhibit 1, at 6-7.

    29.    This fact is illustrated in the specific context of hotel accessibility in a Technical Assistance letter authored by Bill Lan Lee, Acting Assistant Attorney General, Civil Rights Division of the Department of Justice, which states:

> Under the Americans with Disabilities Act of 1990 (ADA), the Department of Justice issues regulations that detail ADA requirements for over six million places of public accommodation, including hotels. The Department's existing rules contain requirements on what constitutes an accessible hotel room ***and also require that hotels make reasonable modifications in policies, practices or procedures when the modifications are necessary to provide accessibility but would not fundamentally alter the hotel's operations.*** The Department has never provided guidance on whether hotels are required to have open-framed beds in accessible guest rooms to accommodate person with disabilities who travel with portable mechanical lifts. However, it appears that it would be a reasonable modification for a hotel to provide open-frame beds and would not fundamentally alter the hotel's operations to do so.

*See* DOJ Technical Assistance Letter dated June 13, 2000, attached as Exhibit 2, (emphasis added).

30. The remedies and procedures set forth at 42 U.S.C. § 2000a-3(a) are provided to any person who is being subjected to discrimination on the basis of disability or who has reasonable grounds for believing that such person is about to be subjected to discrimination in violation of 42 U.S.C. § 12183. 42 U.S.C. 12188(a)(1).

## JURISDICTION AND VENUE

31. The claims alleged arise under Title III such that this Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

32. Personal jurisdiction exists because Defendant owns, manages, and/or operates a hotel located in Allegheny County.

33. Venue in the Western District of Pennsylvania is proper under 28 U.S.C. § 1391(b)(2) because this is the judicial district in which a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred.

## PARTIES

34. Plaintiff Migyanko, at all times relevant hereto, is and was a resident of Butler County, Pennsylvania.

35. Plaintiff is a wheelchair user who is limited in the major life activity of walking.

36. Plaintiff is both a tester in this litigation and a consumer who uses hotels and wishes to access Defendant's goods and services. *See, e.g., Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 457 (4th Cir. 2017); *Civil Rights Educ. & Enf't Ctr. v. Hosp. Props. Tr.,* 867 F.3d 1093, 1102 (9th Cir. 2017); *Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211-12 (10th Cir. 2014); *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1334 (11th Cir. 2013); *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372-74 (1982).

37. Defendant Aimbridge Hospitality, LLC is a Delaware Limited Liability Company with its principal place of business in Plano, Texas.

## FACTUAL ALLEGATIONS

38. Defendant owns, manages, and/or operates hotels throughout the United States.

39. As a fundamental part of these operations, Defendant provides hotel rooms with sleeping beds to its customers.

40. Within the applicable limitations period, Plaintiff called the Hyatt Place Pittsburgh Airport located in Pittsburgh, Pennsylvania ("Hyatt Place Pittsburgh"), in the vicinity of the Robinson Town Center shopping facility, and was told by an agent of Defendant that the Hyatt Place Pittsburgh provides accessible rooms for its guests but that the beds in these "accessible" rooms have a sleeping surface that is 36 inches from the floor.

41. The seat height for Plaintiff's wheelchair is approximately 18 inches from the ground, and the average height of wheelchair seats generally is 18-20 inches.

42. The sleeping surfaces of the beds in Defendant's accessible rooms at the Hyatt Place Pittsburgh are significantly higher than the wheelchair's height and render it difficult if not impossible for Plaintiff to independently transfer from his wheelchair to the bed.

43. Plaintiff can safely, easily, and independently transfer to horizontal surfaces that are approximately the same height as his wheelchair seat, such as dining chairs, toilet seats, benches, lower passenger vehicle seats, and bed surfaces.

44. Transferring to horizontal surfaces that are significantly higher than his wheelchair seat is difficult and dangerous for Plaintiff; he must hoist his bodyweight up to the height of the higher surface using primarily upper body strength.

45. Plaintiff risks injury due to falling or straining his shoulders when transferring to higher horizontal surfaces, such as the beds in the purportedly accessible rooms in the Hyatt Place Pittsburgh.

46. An investigation performed on Plaintiff's behalf at other properties under Defendant's management and/or operation confirmed that the bed heights in Defendant's accessible rooms are, in many cases, between 25 and 36 inches from the ground and are therefore not readily accessible to Plaintiff and the proposed class.

47. The investigation performed on behalf of Plaintiff further confirmed that, in addition to the Hyatt Place Pittsburgh, Defendant owns, manages, and/or operates a substantial number of other hotels in the United States that offer purportedly accessible rooms with bed sleeping surfaces that are too high to be accessible to wheelchair or scooter users.

48. These hotels include, but are not limited to, the following locations:

   A. Home2 Suites by Hilton – Houston Energy Corridor, located at 1106 Sherwood Forest Street, Houston, TX;

   B. Hyatt House – Shelton, located at 830 Bridgeport Avenue, Shelton, CT;

   C. Hyatt Place – Atlanta/Norcross/Peachtree, located at 5600 Peachtree Parkway, Norcross, GA;

   D. Hyatt Place – Birmingham/Inverness, located at 4686 Highway 280 East, Birmingham, AL;

   E. Hyatt Regency – Deerfield, located at 1750 Lake Cook Road, Deerfield, IL;

   F. Hyatt Place – Cincinnati Airport/Florence, located at 300 Meijer Drive, Florence, KY;

G. Hyatt Place – Cleveland/Independence, located at 6025 Jefferson Drive, Independence, OH;

H. Holiday Inn Express & Suites – Pittsburgh South Side, located at 20 South Tenth Street, Pittsburgh, PA;

I. Residence Inn – Pittsburgh/Monroeville - Wilkins Township, located at 3455 William Penn Highway, Pittsburgh, PA;

J. SpringHill Suites – Pittsburgh/Mt. Lebanon, located at 611 Washington Road, Mt. Lebanon, PA;

K. SpringHill Suites – Pittsburgh Mills, located at 3015 Pittsburgh Mills Blvd, Tarentum, PA;

L. SpringHill Suites – Pittsburgh/Monroeville, located at 122 Daugherty Drive, Monroeville, PA;

M. Embassy Suites by Hilton – Dallas Love Field, located at 3880 West Northwest Highway, Dallas, TX;

N. Embassy Suites by Hilton – Houston West/Katy, located at 16435 Katy Freeway, Houston, TX;

O. Fairfield Inn & Suites – Dallas Downtown, located at 55 Evergreen Street, Dallas, TX;

P. Hilton – San Antonio Airport, located at 611 NW Loop 410, San Antonio, TX;

Q. Holiday Inn – Houston South - NRG Area/Medical Center, located at 811 Kirby Drive, Houston, TX;

R. Sheraton – McKinney Hotel, located at 1900 Gateway Blvd., McKinney, TX;

      S.   Sheraton Suites – Market Center Dallas, located at 2101 North Stemmons Freeway, Dallas, TX; and

      T.   Hyatt House – Richmond-West, located at 11800 W. Broad Street, Henrico, VA.

49. Defendant's policy and practice of not providing individuals with disabilities accessible hotel rooms with accessible beds is discriminatory and in violation of the ADA.

50. Though Plaintiff is serving as a tester in this case, he would like to stay at hotels operated by Defendant in the future and use the hotels' accessible rooms, most notably including the Hyatt Place Pittsburgh, which is approximately a 25 minute drive from Plaintiff's residence and is located in the vicinity of both the Pittsburgh airport and the Robinson Town Center shopping facility.

51. Plaintiff often travels to the Robinson Town Center vicinity and uses the Pittsburgh airport.

52. However, the lack of accessible rooms with accessible beds has deterred Plaintiff from staying at the Hyatt Place Pittsburgh and other hotels managed by Defendant.

53. Plaintiff has been, and in the absence of an injunction will continue to be, injured by Defendant's policy and practice of failing to provide accessible sleeping beds to persons with disabilities.

## CLASS ALLEGATIONS

54. Plaintiff brings this action under Rule 23(a) and (b)(2) of the federal rules of civil procedure and on behalf of himself and the following class: "All individuals who use wheelchairs or scooters for mobility and who have been, or in the future will be, denied the full and equal

enjoyment of accessible sleeping surfaces (beds) at hotels owned, operated and/or controlled by Defendant, as a result of the bed heights being too high to permit a safe independent transfer."

55. <u>Numerosity</u>: The class described above is so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the respective class members through this class action will benefit both the parties and the Court, and will facilitate judicial economy.

56. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the members of the class. The claims of Plaintiff and members of the class are based on the same legal theories and arise from the same unlawful conduct.

57. <u>Common Questions of Fact and Law</u>: There is a well-defined community of interest and common questions of fact and law affecting members of the class in that they all have been and/or are being denied their civil rights to full and equal access to, and use and enjoyment of, Defendant's goods, services and facilities due to the policies and practices described above. The questions of law and fact common to the class include, but are not limited to:

- A. Whether Defendant owns, operates and/or controls places of public accommodation subject to Title III of the ADA, and its implementing regulations;
- B. Whether Defendant provides accessible sleeping surfaces (beds) in its "accessible" hotel rooms;
- C. Whether Defendant adequately disperses guest rooms that have accessible beds; and

  D. Whether Defendant's policies and practices discriminate against Plaintiff and the putative class members in violation of Title III of the ADA and its implementing regulations.

58. <u>Adequacy of Representation</u>: Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the members of the class. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the class and has no interests antagonistic to the members of the class. Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation, generally, and who possess specific expertise in the context of class litigation under the ADA.

59. Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the class as a whole.

## CAUSE OF ACTION
### For Violations of 42 U.S.C. §§ 12181, *et seq.*

60. Plaintiff incorporates by reference each and every allegation herein.

61. Plaintiff brings this claim individually and on behalf of the class.

62. Plaintiff is an individual with a disability under the ADA. 42 U.S.C. § 12102(1)(A).

63. Title III of the ADA prohibits discrimination against individuals with disabilities in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation. 42 U.S.C. § 12182(a).

64. Defendant operates hotels, or "places of transient lodging," that are places of public accommodation under Title III of the ADA. *Id*.

65. Defendant has engaged in illegal disability discrimination by, without limitation, failing to ensure that the beds or sleeping surfaces in use in the "accessible" rooms at the hotels it manages and/or operates are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs.

66. Moreover, by failing to provide accessible beds or sleeping surfaces in its "accessible" rooms, Defendant has engaged, directly, or through contractual, licensing, or other arrangements, in illegal disability discrimination, as defined by Title III, including without limitation:

    a) denying individuals with mobility disabilities opportunities to participate in and benefit from the goods, services and facilities available at Defendant's hotels;

    b) affording individuals with mobility disabilities unequal access to goods, services or facilities;

    c) utilizing methods of administration that (i) have the effect of discriminating on the basis of disability; or (ii) perpetuating the discrimination of others who are subject to common administrative control; and

    d) failing to make reasonable modifications in policies, practices, or procedures where necessary to afford services, privileges, advantages, or accommodations to individuals with mobility disabilities.

67. Defendant has failed to make reasonable modifications by having accessible beds in its accessible guest rooms in violation of 42 U.S.C. §12182(b)(2)(A)(ii) and 28 C.F.R. § 36.302.

68. Defendant's ongoing and continuing violations of Title III have caused, and in the absence to an injunction will continue to cause harm to the Plaintiff and the class.

69. Pursuant to 42 U.S.C. § 12188 and the remedies, procedures and rights set forth and incorporated therein, Plaintiff requests relief as set forth below.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests judgment as follows:

a. A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendant failed to take action reasonably calculated to ensure that Defendant's beds or sleeping surfaces in its "accessible" rooms were fully accessible to, and independently usable by, individuals with visual disabilities;

b. A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504(a) which directs Defendant to take all steps necessary to bring its beds and sleeping surfaces in its "accessible" rooms into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that those beds and sleeping surfaces are fully accessible to, and independently usable by, individuals with disabilities, and which further directs that the Court shall retain jurisdiction for a period to be determined to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law;

c. An Order Certifying the proposed class, naming Plaintiff as the representative of the class, and designating counsel for Plaintiff as class counsel;

d. Payment of costs and reasonable attorneys' fees as provided for by law;

e. Nominal damages; and,

f. Such other additional or alternative relief as the Court finds just and proper.

Dated: March 26, 2021						Respectfully submitted,

*/s/ R Bruce Carlson*
R. Bruce Carlson
bcarlson@carlsonlynch.com
Kelly K. Iverson
kiverson@carlsonlynch.com
Nicholas A. Colella
ncolella@carlsonlynch.com
CARLSON LYNCH, LLP
1133 Penn Avenue, 5th Floor
Pittsburgh PA, 15222
(412) 322-9243
